LOGGIE v. PUGET SOUND MILLS & TIMBER CO.

(District Court, W. D. Washington, N. D. January 15, 1912.)

No. 1,640.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—SAWMILL APPARATUS.

The Loggie patent, No. 837,087, for a receiving trip and conveyer used in the manufacture of weather boards, claims 6, 7, and 8, are valid as limited to a two-part guide constructed according to the specification, in combination with a planing machine and a transverse conveyer. Claims 1, 2, 3, 4, and 5, which omit the first section of such guide, are void for lack of utility. Claims 6, 7, and 8 *held* infringed by one form of apparatus used by defendant, but not infringed by a modified form of construction.

In Equity. Suit by George W. Loggie against the Puget Sound Mills & Timber Company for infringement of patent. On final hearing. Decree for complainant granting an injunction and awarding nominal damages.

J. W. Kindall, S. M. Bruce, and Dorr & Hadley (Delbert H. Decker, on the brief), for complainant.

Kerr & McCord, for defendant.

HANFORD, District Judge. This is a patent infringement case, founded upon United States letters patent No. 837,087, issued to the complainant for a combination of sawmill apparatus styled "Receiving-Trip and Conveyer." The specifications of the patent describe an assemblage of machinery with conveyers, guides, bins, and tables conveniently arranged in the interior of a factory for making weather boards for covering the exterior walls of houses.

The aggregation comprises two or more planing-machines, set parallel to each other; guides, adapted to clamp the pieces of timber, on which the planers operate, after they pass the cutters to hold them flat, straight and level until the entire length of the pieces have passed from the discharge ends of said machines and then drop them transversely upon a series of carrier belts, which, actuated by pulleys, carry the pieces laterally in a direction at right angles to the line on which they have traveled through the planing-machines; a bin or platform, into or upon which the pieces are deposited by said lateral carrier; a re-saw, which divides the thickness of the planed pieces making of each two bevel-shaped weather boards, which is set in a position parallel to the planing-machines; a trimmer table, upon which the boards are deposited after passing the re-saw, which is also set parallel to the other machines and has suspended on hangers above it two trimmer saws; a longitudinal traveling belt, on which the boards are carried longitudinally from the trimmer table to a sorting table, from which the boards may be taken as required to be stacked or loaded into cars or wagons. The entire apparatus is designed to operate upon pieces of lumber of the required width and double the thickness of weather boards, and of varying lengths, to surface, divide, and trim them in a continuous movement. The guides and lateral carrier act automatically, in delivering the planed pieces from the planing-machines to the bin or platform, with ends, nearest the re-saw, registering.

It is unnecessary to describe in detail all of the minor equipments described in the specifications of the patent. The guides, however, must be particularly described. They are in two parts, the first of which consists of two boards or pieces of scantling forming the sides of a chute set horizontally upon, or into, the bed-plate of each planer, spaced to form a channel between the two, wide enough to accommodate the passage of the planed pieces as they travel flatwise through and from the planers; one of the said side-strips being movable so as to change the width of the channel if required to accommodate wider or narrower boards. The other side-strip is fixed rigidly and has annexed to it a bottom piece forming an under-support for the planed boards which is less than one-half as wide as the boards which are shoved upon it as they pass through and from the planer. There is also annexed to said rigid side-strip, a top board jutting over the under-support which acts as a down-presser, holding the boards down

upon the ledge or shelf constituting the under-support; said rigid side-strip, the under-support, and the down-presser constituting a side groove through and along which one edge of the planed boards travel through and from the planer, holding the board flat and level until it has passed beyond the bed-plate at the discharge end of the machine. The second part of the guide is an extension of the side-strips and the under-support extending longitudinally across and above the lateral carrier, held in position by hangers attached to overhead beams and abutting end-on to the side-strips and under-support of the first section. The side-strip of the extension to which the under-support is annexed is rigid like the one of which it is an extension, and the other is supported by a swinging hanger hinged to the overhead beam which permits movement to change the width of the channel. Between the edge of the under-support and the adjustable side-strip there is an open space through which the planed boards drop upon the lateral carrier after they have passed beyond the end of the side groove above described. There being no top piece upon the second section of the guide to prevent the boards from tipping, they drop by gravity through said open space, and, as they all drop as soon as they have passed out of the side groove, the ends nearest to the machines register, regardless of their lengths. They may be taken at once to the re-saw or allowed to accumulate in the bin or upon the platform above described.

The re-saw has capacity equal to that of two or more planers. The bin or platform contains fenders to prevent an accumulation of boards from chafing the carrier belts. In operation, pieces of timber of the required breadth and double the thickness of weather boards are passed through the planers and guides and dropped upon the lateral carrier and by it deposited automatically in the bin or upon the platform, with ends uniformly near to the re-saw, from which they are taken by hand and passed, in a direction reverse to the course through the planers, through the re-saw and thence to the trimmer table, where an operator trims the ends, if necessary, or cuts out knots or defective parts, and they are then passed to the longitudinal carrier by which they are conveyed to the sorting table. The several operations of surfacing, re-sawing, trimming, and sorting may be, but do not necessarily have to be, in a continuous movement. One or more of the planing-machines may be in operation while the others constituting the battery may be idle, or all may be in operation simultaneously, and the planing-machines may all be idle while the re-saw performs its function. The guides, lateral conveyer, bin or platform, re-saw, trimmer table, longitudinal conveyer, and sorting table are placed at different elevations so that gravity assists in the general operation.

The merit of novelty and invention is claimed for the entire arrangement of machines; the advantages being economy of space, reduction of the number of persons required to carry on the work, and rapidity. The feature of the combination which is new consists of the two-part guide above described. In the title, specifications, and claims of the patent, the word "trip" is used to denominate this important part of the combination. There is manifest originality in this

application of that word.  I do not find in the dictionary definitions of that word, any authority for its use as a noun descriptive of any particular device or thing.  By his testimony in this case, the inventor seems to have an indefinite idea of its meaning.  In the first five claims of the patent the word "trip" appears to be applicable, only, to the second section or longitudinal extension of the guide, and each of the other claims refer to it as a "receiving-trip comprising a top guide attached to one of said planer-bed side guides and extending over said channel bottom."  This "top guide" is the part of the guide which in this opinion I have denominated the "down-presser," as its function is to prevent the planed lumber from tipping before it has advanced to the proper place for tipping.  Therefore I must assume that the word "trip" in claims 6, 7, and 8 is applicable to so much of the guide as includes the down-presser and the second section or longitudinal extension thereof.

The claims of the patent are of the following tenor:

"1. The combination of a battery of planers or similar wood-finishing machines; a receiving-trip extending longitudinally from the rear of each of said planers, said trips so constructed and placed that they will retain the stuff as it comes from the planers, in substantially the same plane as it passed through the said planers, until it has passed entirely out of the same; and a lateral conveyer at the rear of said battery of planers and beneath said trips.

"2. The combination of a battery of planers or similar woodworking-machines; a receiving-trip extending longitudinally from the rear of each machine, said trips so constructed and placed that they may retain the stuff as it comes from the planers in substantially the same plane as it passes through said machines until it has passed entirely out of the same; a lateral conveyer at the rear of said battery of machines and beneath said trips; and a receptacle at the delivery end of said conveyer.

"3. The combination of a battery of planers or similar woodworking-machines: a receiving-trip extending longitudinally from the rear of each of said machines; a lateral conveyer located at the rear of said machines and beneath said trips; a receptacle at the delivery end of said conveyer; and a machine to complete the second stage in the process of manufacture, said machine located near one end of said receptacle, and preferably in file line with said battery of planers.

"4. The combination of a battery of planers or similar woodworking-machines: a receiving-trip extending longitudinally from the rear of each of said machines; a lateral conveyer located at the rear of said machines and beneath said trip; a receptacle at the delivery end of said conveyer; a machine, or machines, to complete the second stage in the process of manufacture, located near one end of said receptacle, and preferably in file line with said battery of planers; and a machine, or machines, to complete the third stage in the process of manufacture located by the side of the last-mentioned machines, and in file line with said battery of planers.

"5. The combination of a battery of planers or similar woodworking-machines; a receiving-trip extending longitudinally from the rear of each of said machines; a lateral conveyer located at the rear of said machines and beneath said trip; a receptacle at the delivery end of said conveyer: a machine, or machines, to complete the second stage in the process of manufacture located near one end of said receptacle and in file line with said battery of planers; a machine, or machines, to complete the third stage in the process of manufacture located by the side of said last-named machines and in file line with said battery of planers; and a longitudinal conveyer the receiving end of which is located alongside of and below said last-mentioned machine, or between said last-mentioned machines, and the delivery end of which is located above a table.

"6. The combination with a planer of a receiving-trip, which is designed to receive the stuff as it comes from a wood-planer, the bed of which planer has a channel composed of a bottom and side guides; the receiving-trip comprising a top guide attached to one of said planer-bed, side guides and extending over said channel-bottom; two deep, side guides registering with the side guides on said planer-bed: and a narrow bottom guide or ledge attached to one of said deep, side guides and registering with said channel-bottom.

"7. The combination with a planer of a receiving-trip, which is designed to receive the stuff as it comes from a wood-planer, the bed of which planer has a channel composed of a bottom and two side guides; the receiving-trip comprising a top guide attached to one of said planer-bed, side guides and extending over said channel-bottom; two deep, side guides registering with the side guides on said planer-bed; a narrow bottom guide or ledge attached to one of said side guides and registering with said channel-bottom; slotted spreaders attached to said deep, side guides; and supporting-hangers also attached to said deep, side guides.

"8. The combination with a planer of a receiving-trip, which is designed to receive the stuff as it comes from a wood-planer, the bed of which planer has a channel composed of a bottom and two side guides; the receiving trip comprising a top guide attached to one of said planer-bed, side guides and extending over said channel-bottom; two deep, side guides registering with the side guides on said planer-bed; a narrow bottom guide or ledge attached to one of said side guides and registering with said channel-bottom; slotted spreaders attached to said deep, side guides; and supporting-hangers also attached to said deep side guides, one set of said hangers is attached overhead in a hinge-joint parallel with said guides and the other set is rigidly attached overhead."

For convenience, and to make this opinion lucid, I will restate these claims using my own descriptive words in lieu of the terms of the patent:

The first claim of the patent is for a combination, the elements of which are:

(a) A battery of planing-machines; that is to say, several planing-machines set parallel to each other.

(b) The second section or longitudinal extension of the two-part guide above described.

(c) The lateral carrier above described.

Claim 2 is for a combination, the elements of which are the same as claim 1, and the addition of a receptacle which I have heretofore referred to as a bin or platform. It may be a mere vacant space into which the planed lumber may be deposited by the lateral carrier.

Claim 3 is for a combination, the elements of which are the same as in claim 2, with the addition of the re-saw for dividing the thickness of the boards which is the second stage of manufacture.

Claim 4 is for a combination, the elements of which are the same as in claim 3, with the addition of apparatus for trimming, constituting the third stage in the process of manufacturing weather boards.

Claim 5 is for a combination, the elements of which are the same as in claim 4, with the addition of a longitudinal conveyer conveniently located to carry the finished boards from the trimming table to the sorting table.

Claim 6 is for a combination, the elements of which are:

(d) A single planing-machine the bed of which has a channel composed of a bottom and two side guides.

(e) The down-presser above described.

(f) The two side pieces of the second section or longitudinal extension of the two-part guide placed in line with and ends abutting against ends of the side-strips of the channel on the bed-plate.

(g) A narrow under-support annexed to one of said side pieces in line with and abutting the outward end of the bottom piece of the side-groove upon the planer-bed heretofore described.

Claim 7 is for a combination, the elements of which are the same as in claim 6, with the additional elements of slotted spreaders adapted to space the side pieces of the second section or longitudinal extension of the two-part guide, and the supporting hangers attached to overhead beams and to said side pieces.

Claim 8 is for a combination, the elements of which are the same as in claim 7, with a more detailed description of attachments to the supporting hangers and guide constituting the means for spacing them as required.

One of the defenses pleaded in the answer is anticipation, and there have been introduced in evidence several patents antedating the complainant's patent, the most important of which is United States patent No. 299,832, dated June 3, 1884, to W. H. Moore for a machine for making bed slats. This patent is for an invention relating to the manufacture of bed slats where a bolt of timber having double the thickness required for slats, after being planed on both sides and both edges moulded, is afterwards divided to make two slats. The patent states that the object of the invention is to take the bolt as it comes from the planer and automatically split it into two slats with a splitting saw, and plane off the saw-scarf thus formed, and deliver the finished slats at the end of the machine. This result to be accomplished by a process of operation described as follows:

The bolt, as it comes from the planer, falls across two traveling belts, which carry it off at right angles and deposit it on edge in an open trough, the bottom of which is formed by an endless belt which with the aid of grooved friction-rollers carries it through the operation which divides it into two slats. That apparatus is designed and well adapted to do for bed slats, all that, and more than, the complainant's apparatus can do for weather boards, and the work of manufacturing bed slats is similar to the operation of making weather boards.

The substantial difference between the apparatus described in the Moore patent and that described in the complainant's patent is in the adaptability of the latter for delivering, automatically, boards that are long and limber, which the Moore patent lacks. The structure designed by the complainant and described in his patent embodies the general idea of the Moore patent with the additions required for handling automatically material suitable for making weather boards. Therefore it is an improvement in woodworking machinery, but not a pioneer invention, entitling the patentee to a broad construction of the claims of his patent, including the right to substitute equivalents for the particular parts of the structures described therein. Chutes for guiding lumber, when shoved endwise, have been in general use for many years, and all that appears to be original in

the complainant's apparatus is a chute constructed with a side groove along part of its length and an opening in its floor on its opposite side along the remainder of its length, placed in a horizontal position so that lumber shoved through it will be retained flat, straight, and level while one edge is clamped in the groove and then dropped horizontally through the floor opening. It is the decision of the court that the monopoly entitled to protection under the complainant's patent is limited to cover, only, the two-part guide constructed according to the specifications of his patent, in combination with a planing-machine and a transverse conveyer.

I hold that the first five claims of the complainant's patent are void for lack of utility, because, without the first section of the guide including the down-presser, which is omitted from said claims, the apparatus is inefficient and impractical. Claims 3, 4, and 5 are also void, because they cover only aggregations of machines operating successively and independently of each other and do not embody patentable combinations. I hold claims 6, 7, and 8 to be valid to the extent above indicated.

By a preponderance of the evidence it has been proved that the defendant adopted and put into use in its mill apparatus for manufacturing weather boards, including the two-part guide described in the complainant's patent; but either because of defective construction by reason of which the apparatus did not work satisfactorily, or to avoid infringement, a different form of down-presser was added. The defendant's down-presser is an adaptation of the lever and fulcrum principle. In form it resembles a human foot attached by a pivot pin at the ankle joint to a stanchion, with the heel part toward the planing-machine and elevated so as to permit the boards to pass under it; the toe part acting as the down-presser. The power of the lever is effectuated by a suspended weight attached to the heel by a cord looped over an overhead pulley to raise the heel so that the weight presses the toe down and the inclined position of the foot permits the boards to pass under it and, when shoved beyond the toe, to tip and fall from the under-support through the open space between it and the side wall of the chute, down upon the lateral carrier. This form of down-presser is not an exact equivalent for the flat top piece of the guide described in the complainant's patent, because it does not exert continuous pressure upon the traveling boards as they pass through the planing-machine and is not so well adapted for use in operating upon short pieces, and without requiring special adjustment it will act upon boards of varying thickness. The evidence proves that, after adding the new down-presser to the apparatus in the defendant's mill, the flat top-piece of the guide was removed, it being superfluous; and it is the opinion of the court that, when that was done, the apparatus was so changed as to avoid infringement of complainant's patent.

By the decree to be entered the defendant will be enjoined from again infringing claims 6, 7, and 8 of the complainant's patent by the construction or use of sawmill apparatus including the two-part guide, and a judgment for nominal damages for past infringement is awarded,

with costs. The evidence submitted does not afford a basis for estimating damages. Therefore only nominal damages can be awarded. City of Seattle v. McNamara, 81 Fed. 863, 26 C. C. A. 652.

NOTE.—Subsequently to the rendition of this opinion the court granted a motion by plaintiff to refer the case to a master to receive evidence and compute the profits to defendant from its use of apparatus infringing claims 6, 7, and 8 of the patent.